## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

SHARON ROSENDALE,                          :
individually and on behalf of all others
similarly situated,                        :

     Plaintiff,                        :

      v.                              :

CARCHEX, LLC                               :       Case No. 1:19-cv-2780
118 Shawan Road, Suite 210
Baltimore, Maryland 21030                  :

Serve on:  Resident Agent:                 :       JURY TRIAL DEMANDED
Cogency Global
1519 York Road                             :
Lutherville, Maryland 21093
                                           :
and
                                           :
NATIONAL AUTO INSPECTIONS, LLC
118 Shawan Road, Suite 210                 :
Baltimore, Maryland 21030
                                           :
Serve on:  Resident Agent:
Jason Goldsmith                            :
118 Shawan Road, Suite 210
Baltimore, Maryland 21030                  :

     Defendants.                       :

## CLASS ACTION COMPLAINT

The allegations contained in this Complaint are based on Plaintiff's personal knowledge as to Plaintiff's own conduct and on information and belief as to all other matters based on an investigation by Plaintiff's Counsel:

## I.    INTRODUCTION

1.    Defendants are engaged in deceptive and fraudulent acts involving the marketing of vehicle service contracts ("VSCs").  The VSCs are marketed as

protecting consumers from large repair bills for vehicles that are no longer covered by manufacturers' warranties, but, in reality, the VSCs are sold as part of a marketing scam that is simply a means for Defendants to unlawfully enrich themselves at the expense of consumers.

2.      Plaintiff Sharon Rosendale ("Plaintiff") brings this class action against Carchex, LLC and National Auto Inspections, LLC trading as Carchex (collectively "Carchex" or "Defendants") for Defendants' unfair trade practices and false and misleading representations.

3.      Plaintiff brings her claims individually and on behalf of a nationwide class and Pennsylvania sub-class of persons who purchased a VSC marketed by Carchex within the applicable limitations period.

4.      Carchex blatantly and fraudulently misrepresents the nature and scope of coverage and protection afforded by the VSCs it markets.

5.      As a result of the Defendants' business practices, Plaintiff and Class members have been harmed and have suffered actual damages, including overpayment for their VSCs and out- of-pocket costs for vehicle repairs

## II.    JURISDICTION AND VENUE

6.      This Court has original diversity jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") because Plaintiff and many members of the Class are citizens of states different from Defendants' home state, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class and Classes.

7.      This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Pennsylvania and submits to the Court's jurisdiction.

8.      Venue is proper under 28 U.S.C. § 1391(a) because Defendants have headquarters in Maryland and are residents of Maryland.  This Court has pendent or supplemental personal jurisdiction over the claims of putative class members outside of Maryland.

9.      Venue also is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendants conduct substantial business in Maryland and many of the actions giving rise to the Complaint arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state, committing a tortious act in this state, and causing injury to persons in this state and elsewhere.

## III.   PARTIES

10.      Plaintiff Sharon Rosendale at all times relevant has been a citizen and resident of the state of Pennsylvania and resides in Fayette County, PA.

11.      Defendant Carchex is a Maryland corporation with headquarters located at 118 Shawan Road, Suite 210, Cockeysville, MD 21030.  Carchex is the successor-in-interest and/or alter ego of Defendant National Auto Inspections, LLC.

12.      Carchex advertises and markets VSCs throughout the country, including through its website, www.carchex.com, and through its call centers staffed with Carchex employees.

13.      Carchex markets to consumers and intentionally designs its advertising to give the appearance that it provides comprehensive vehicle warranties.

14.      Defendant National Auto Inspections, LLC ("NAI") is a Maryland corporation with headquarters located at 118 Shawan Road, Cockeysville, MD 21030. NAI conducts and/or previously did business under the name Carchex, and upon

information and belief, shares resources and personnel with Carchex.  Among other things, Carchex and NAI have the same CEO and the same principal office in Maryland.

## IV.   FACTS

15.     Defendants have concocted a scheme and instituted practices and policies intended to confuse, deceive and mislead consumers with respect to the coverage and protection afforded by Carchex VSCs.  For example, consumers who purchase Carchex VSCs which expressly state that they cover repairs to the "powertrain" and "the engine" reasonably rely upon such representations and expect the "powertrain" and "engine" of their vehicles to be covered by the VSC. Defendants, however, market and sell the VSCs knowing that coverage of such repair items will be summarily disavowed and/or that exclusions of coverage will be so broadly applied that the practical effect is to make the VSCs worthless.

16.     Defendants mislead consumers into believing they are purchasing VSCs that provide comprehensive vehicle protection that purportedly will save the consumers from paying thousands of dollars for vehicle repairs.  In reality, consumers are sold VSCs that cover little, if anything, and leave consumers paying not only for the VSCs but also paying for expensive vehicle repairs that Defendants represented would be covered by the VSCs.

17.     Had Defendants disclosed the true protection and scope of coverage of the VSCs, Plaintiff and the putative members of the classes ("Class Members") would not have purchased the VSCs or would have paid significantly less for the VSCs.

18.     On or about July 31, 2018, Plaintiff called Carchex and spoke with a representative about the coverage afforded by the VSCs offered.

19.     Carchex operates a call center in Maryland with employees who serve as sales agents.

20.     Upon information and belief, Carchex sales agents have utilized a uniform sales script throughout the Class period and are trained to make materially identical representations and provide the same information to all callers concerning VSCs and the purported coverage and protection afforded by VSCs.

21.     When Plaintiff spoke with the Carchex agent, Plaintiff explained that comprehensive coverage for her vehicle and engine was important to her, particularly because she had nearly 100,000 miles on her vehicle – a 2013 Chevrolet Avalanche with VIN   3GNTKGE70DG357175 (Plaintiff's "vehicle") – and her extended warranty was about to expire.

22.     On or about the same date, Plaintiff also reviewed the Carchex website at www.carchex.com to learn about the VSCs.  Upon information and belief, the content and representations on the Carchex website have remained substantially the same throughout the Class period.

23.     Carchex represented to Plaintiff on the phone and via its website that the Powertrain Plus (Gold) VSC would provide comprehensive engine and powertrain coverage, would protect her from expensive engine and powertrain repairs and would cover repairs to her engine and powertrain.

24.     Plaintiff understood by what she read and what she was told that she would be receiving comprehensive coverage for the engine and powertrain of her vehicle.

25.     Carchex purposely deceived Plaintiff, and similarly deceives prospective customers to believe that they will have comprehensive coverage with

Carchex VSCs.  For example, Carchex advertises on its website:



26.     On or about July 31, 2018, Plaintiff agreed to purchase a VSC from Carchex.

27.     Plaintiff purchased the "**Powertrain Plus (Gold)**" VSC because Carchex represented on its website and by its representative on the phone that the VSC covered the engine and powertrain.  Indeed, Carchex represents that the Gold Coverage is "comprehensive" and "includes components from all major systems" which makes it "a good fit for vehicles with over 90,000 miles."

28.     Specifically, Carchex represents on its website:



29.     Plaintiff's VSC cost $3,183.00.   Plaintiff provided her credit card information to the Carchex representative on the phone and agreed to pay $132.63 as a down payment and twenty-three (23) additional monthly payments of $132.63 each.

30.     The duration of Plaintiff's VSC was 60 months and/or 100,000 miles from the time of purchase. Accordingly, Plaintiff's vehicle would be covered to approximately 198,000 miles.

31.     Carchex represented to Plaintiff, and continues to represent on its website, that its VSCs cover every significant aspect of an engine, with limited exclusions. Upon information and belief, the same representations are made by phone to all prospective consumers.

32.     As shown in the screenshot from the Carchex website pasted below, Carchex represents:

- A powertrain warranty covers everything that makes a vehicle move, from the engine to the transmission to the parts that allow power to travel from the engine to the wheels.

33.     Based on the representations on the website and from what Carchex represented to Plaintiff on the phone, Plaintiff purchased the "Powertrain Plus (Gold)" VSC reasonably relying upon the representation that it would cover everything that makes her vehicle move and was well-suited for her vehicle.

34.     Carchex intentionally misleads prospective consumers into believing that the coverage provided by Carchex VSCs is similar to a new car warranty and that the only exclusions from coverage are maintenance items, such as brake pads, wiper blades and tires.  Specifically, Carchex provides the following questions and answers on its website:

**CARCHEX answers your most pressing Auto Warranty questions**

- What is a powertrain warranty? What does it cover?
- What's not covered in a factory auto warranty?
- What's an exclusionary extended warranty? What does it cover?

- How does an auto warranty compare to actual repair costs?
- Is an extended auto warranty worth it?
- Is an extended car warranty transferrable?

35.     After clicking on "What is a powertrain warranty? What does it cover?" from the above section on the website, the website displays the following page, which among other things, details the extensive coverage of the "engine":

# Facts About Factory, Bumper-To-Bumper And Powertrain Warranties

Sometimes there's confusion about auto warranties. For example, brake pad change is unlikely to be covered under the warranty – but there are exceptions. Also powertrain warranties apply only to certain car parts. So what is covered and when? Let's look at some common terms and clear up the confusion.

**Factory And Bumper-To-Bumper**

You might have heard the terms "factory" or "bumper-to-bumper" when referring to a new car warranty. This coverage comes included with the purchase of the car. These warranties are described in terms of time and mileage, for example, 3 years or 36,000 miles, whichever comes first.

When you buy a car, nearly the entire vehicle is covered for unforeseen mechanical problems. This means that if the engine starts to fail for no reason during the coverage period, the repairs are paid for by the dealer.

**Powertrain Warranty**

The powertrain warranty is also included in the new car purchase. It covers specific auto parts and often has longer terms than the bumper-to-bumper warranty. For example, it might be extended to 5 years or 60,000 miles or even more with some dealers. In general, the powertrain warranty covers the:

- Engine (cylinder block, cylinder heads, fuel pump, engine mounts, injection pump, manifold, oil pump, seals & gaskets, thermostat, timing chain, etc.)
- Transmission (clutch cover, seals & gaskets, torque converter, transfer case, transmission case, transmission mounts, etc.)
- Front and rear wheel drive components (axle shafts, bearings, support bearings, drive axle housing, drive shaft, propeller shafts, retainers, support, seals & gaskets, universal & constant velocity joints, etc.)

If your factory warranty has expired, these components are no longer covered, so it might be wise to purchase extended coverage.

36.     With respect to repairs that are not covered, Defendants only identify vehicle maintenance items or repairs resulting from misused or damaged vehicles as being excluded, as shown below from the website:

**What's Not Covered In Auto Warranties?**

In general, auto warranties do not cover:

- Accident or collision damage
- Car wash damage
- Vandalism or theft
- Fire or chemical spills
- Damage due to misuse
- Dings, dents, and paint chips
- Road salt damage
- Environmental damage (e.g. tree sap, bird droppings)
- Damage due to natural disasters or hail

Furthermore, normal maintenance is not covered either, such as:

- Oil, fluid, and filter changes
- Tire rotation and alignment
- Wiper blade change
- Brake pad replacement
- Clutch lining
- Cleaning, detailing, polishing

37.     Significantly, the only exceptions to coverage identified to Plaintiff and other prospective customers on the phone or on the website are things like windshield cracks or wiper blades, as demonstrated by the following representation on the website:

**What Are The Exceptions?**

Usually windshield stress cracks are not covered. However, some factory warranties will cover stress crack repair within the first 12 months or 12,000 miles of use. Also, some dealers provide wiper blade replacement during the first six months of driving, regardless of the miles driven. Finally, wheel alignment, tire balancing, and brake pad/lining replacement might be covered under factory warranty for the first 12 months or 12,000 -18,000 miles depending on the dealer.

38.     When Plaintiff purchased her VSC, she reasonably and justifiably relied upon Defendants' representations that the VSC would cover the engine and powertrain, and that this specifically included "[a]ll internally lubricated parts within the engine including: engine mounts, timing belt, timing gears, cylinder head intake and exhaust valves, valve springs, valve guides, valve seats and all pumps."

39.     Defendants intentionally misled Plaintiff and other consumers to believe that the VSCs will provide comprehensive protection from foreseeable and expensive vehicle repairs with representations such as the following on the website and phone:





40.    Based on Defendants' representations, Plaintiff reasonably expected that major powertrain and engine repairs would be covered by the VSC she purchased.

41.    Plaintiff was unaware that Defendants misrepresent the scope and nature of coverage under the VSC and that they scheme to defraud consumers.  Had Plaintiff known the engine and powertrain was not covered under the VSC as represented, she would not have purchased the VSC or would have paid significantly less for it.

42.    On August 3, 2018, Carchex mailed the VSC to Plaintiff along with a letter from its CEO, Jason Goldsmith.  Mr. Goldsmith also is the CEO of National Auto Inspections, LLC.  In the letter to Plaintiff, Mr. Goldsmith represented that Carchex is committed to providing the best products and the best service in the industry.

43.    On or about July 1, 2019, Plaintiff brought her vehicle to Uniontown Chevrolet for inspection and diagnosis of a possible engine problem.

44.    As of July 1, 2019, Plaintiff had complied with her obligations under the VSC: she was current on her monthly payments, and her vehicle had just over

111,000 miles on it.  Accordingly, her VSC was in effect.

45.      Uniontown Chevrolet suspected a failure of an engine component in Plaintiff's vehicle and called the warranty number provided by Carchex, 800-531-192. Uniontown Chevrolet provided the VIN of Plaintiff's vehicle and requested that an inspector or other agent come to see the vehicle before repairs were made.

46.      The agent for Carchex refused the invitation.  Uniontown Chevrolet then disassembled parts of the engine and again called the number provided by Carchex to advise that there was a failure involving a piston and exhaust valve. Uniontown Chevrolet was told on the call that the components were not covered and that no agent would come to inspect the vehicle.

47.      Uniontown Chevrolet told the Carchex representative on the phone that the failed components certainly were part of the powertrain and the internally lubricated parts of the engine and emphatically stated that the repairs should be covered under the Plaintiff's VSC.  Nevertheless, Carchex continued to summarily reject the claim on the call.

48.      Carchex also falsely assures consumers that should Carchex fail to perform its obligations under the VSC, the obligations of Carchex are insured by "American Bankers Insurance."

49.      On July 22, 2019, Plaintiff called the number for American Bankers Insurance which is provided in her VSC.  Plaintiff provided her pertinent information but was immediately told that American Bankers Insurance could not help her with her claim.

50.      Because of Defendants' actions, Plaintiff was forced to pay out of pocket thousands of dollars for the repair of her engine.

51.     Upon information and belief, Carchex schemes and coordinates its activities with third parties such as American Bankers Insurance and others so as to maximize its profit and deceive consumers into purchasing VSCs that Carchex knows will not provide the coverage or protection as advertised and promoted to the public.

52.     When Plaintiff and Class Members purchased their VSCs, they reasonably relied on Defendants' representations that the VSCs provided comprehensive engine and powertrain coverage.

53.     Defendants emphasize on the Carchex website and when speaking with prospective customers, such as Plaintiff, the comprehensive coverage of the VSCs and the extremely limited nature of any coverage exclusions.

54.     With respect to exclusions, Defendants highlight maintenance items like oil changes, tire rotation and windshield wiper blades as items not covered by warranties.  Plaintiff and Class Members reasonably rely upon such representations and omissions of fact when purchasing VSCs.

55.     Upon information and belief, Defendants are aware of numerous consumers around the country complaining of Defendants' unfair and deceptive business practices.

56.     Plaintiff and Class Members would not have purchased their VSCs or would have paid significantly less for their VSCs if Defendants had not misrepresented facts and otherwise schemed to defraud consumers.

57.     Plaintiff and Class Members reasonably relied on Defendants' representations and paid for what was represented to be comprehensive engine and powertrain coverage.

58.     Plaintiff and the Class Members have suffered an ascertainable loss as

a result of Defendants' unfair and deceptive conduct, breach of common law and statutory duties, and omission and/or misrepresentations associated with the VSCs, including but not limited to overpaying for VSCs and out-of-pocket losses.

## V.   CLASS ACTION ALLEGATIONS

59.    Plaintiffs bring this action, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Classes for the maximum time period allowable by law:

**Nationwide Class:**  All persons in the United States who purchased a VSC.

**Pennsylvania Class:**  All persons in Pennsylvania who purchased a VSC.

60.    The Nationwide Class and Pennsylvania Class are referred to collectively as the "Classes." Plaintiff reserves the right to revise the definition of the Classes based upon subsequently-discovered information and reserves the right to establish sub-classes where appropriate.

61.    The Classes exclude Defendants and any entity in which Defendants have a controlling interest, as well as their officers, directors, legal representatives, successors, and assigns. The Classes also exclude government entities and judicial officers who have any role in adjudicating this matter.

62.    The Classes are so numerous that joinder of all members is impracticable.

63.    Common questions of law and fact exist to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited

to:

- Whether the Defendants misrepresent material facts concerning their business practices and the protection and coverage afforded by VSCs;

- Whether Defendants intentionally and knowingly falsely represent, conceal, suppress and/or omit material facts, including the fact that the VSCs do not cover repairs to the engine and powertrain and all internally lubricated parts and components;

- Whether Defendants made material misrepresentations and omissions concerning the standard, quality or grade of the VSCs;

- Whether members of the Classes would have purchased VSCs or paid less to purchase VSCs if Defendants, prior to purchase, had disclosed the truth about their business practices and the coverage afforded by the VSCs;

- Whether Defendants misrepresented and/or concealed material facts from Plaintiffs and members of the Classes in order to, amongst other things, sell more VSCs;

- Whether Defendants have been unjustly enriched by their actions; and

- Whether damages, restitution, equitable, injunctive, compulsory, declaratory or other relief is warranted.

64. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

65. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

66. Plaintiff's claims are typical of the claims of the Classes Plaintiff seeks to represent.   As alleged herein, Plaintiff and Class Members sustained damages

arising out of the same unlawful actions and conduct by Defendants.

67.     Plaintiff is willing and prepared to serve the Classes in a representative capacity with all the obligations and material duties necessary. Plaintiff will fairly and adequately represent and protect the interests of the Classes and has no interests adverse to or in conflict with the interests of any of the other members of the Classes.

68.     Plaintiff's interests are co-extensive with and not antagonistic to those of absent members within the Classes. Plaintiff will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

69.     Plaintiff has engaged the services of the undersigned counsel, who are experienced in class actions and other complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Classes.

70.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

71.     The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

72.     The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the

management of this matter as a class action.

73.     The nature of notice to the proposed Classes is contemplated to be by direct mail, email and/or online publication upon certification of the Classes.

## VI.    CLAIMS FOR RELIEF

### <u>COUNT I</u>

**VIOLATIONS OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION ACT
73 P.S. Section 201-1, et seq.**

74.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

75.     Plaintiff brings this count on behalf of herself and the Pennsylvania Class.

76.     Section 201-2(3) of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPA") defines "trade" and "commerce" to mean the "advertising, offering for sale, sale or distribution of any services or any property, tangible or intangible, real, personal or mixed, and any other article, commodity or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth."

77.     Defendants have engaged in trade and commerce in Pennsylvania and nationally by marketing, advertising and offering for sale VSCs directly to consumers in Pennsylvania and nationwide.

78.     In the course of marketing, advertising and offering for sale VSCs, the Defendants have misrepresented the protection and coverage provided by the VSCs as well as the exclusions from coverage.

79.     Defendants' acts and practices are likely to confuse and mislead

consumers acting reasonably under the circumstances as to the protection and coverage provided by the VSCs as well as the exclusions from coverage.

80.     As set forth herein, Defendants have engaged in unfair and deceptive acts and practices in violation of the UTPCPA.

81.     Defendants have repeatedly and continually engaged in materially deceptive or misleading consumer-related business practices, and they advertise and market VSCs with coverage and characteristics that Defendants know are not accurate or actually provided.

82.     Defendants' actions are directed toward consumers and have a broad negative impact on the public, including Plaintiff and the Pennsylvania Class.

83.     Defendants' material misrepresentations were and are substantially uniform in content, presentation and impact upon consumers at large.

84.     Plaintiff and the Pennsylvania Class have suffered ascertainable losses as a result of Defendants' conduct.

**COUNT II**

**COMMON LAW FRAUD**

85.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein.

86.     Plaintiff brings this count on behalf of herself, the Pennsylvania Class and/or the National Class against the Defendants.

87.     Defendants' business model is founded upon fraud.

88.     Defendants made and continue to make false and fraudulent statements and representations of material fact and omit material facts to Plaintiff and the Classes concerning the coverage and protection afforded by the VSCs and the exclusions of

coverage.

89.     Defendants' misrepresentations and material omissions of fact are part of their overall business practices and are substantially similar and uniform.

90.     Plaintiff and the Classes reasonably and justifiably relied and rely upon Defendants' misrepresentations and omissions.

91.     Defendants' material misrepresentations were and are substantially uniform in content, presentation and impact upon consumers at large.

92.     Plaintiff and the Classes have suffered ascertainable losses as a result of Defendants' conduct.

## COUNT III

### NEGLIGENT MISREPRESENTATION

93.     Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein

94.     Plaintiff brings this count on behalf of herself, the Pennsylvania Class and/or the National Class against the Defendants.

95.     Defendants made material misrepresentations and other statements and material omissions in connection with the marketing and advertising of VSCs.

96.     The misrepresentations were and are false, deceptive and/or misleading at the time they were made.  The omission of material facts also makes Defendants' representations false, deceptive and/or misleading.

97.     Defendants at all times relevant knew that their representations were false, deceptive and/or misleading at the time they were made and knew that they were omitting material facts.

98.     Defendants acted with the intent to deceive and mislead Plaintiff and

the Classes.

99.     Plaintiff and the Classes reasonably and justifiably relied and rely upon Defendants' misrepresentations and omissions.

100.    Defendants' material misrepresentations were and are substantially uniform in content, presentation and impact upon consumers at large.

101.    Plaintiff and the Classes have suffered ascertainable losses as a result of Defendants' conduct.

## COUNT IV

### UNJUST ENRICHMENT

102.    Plaintiff hereby incorporates by reference the preceding paragraphs as if they were fully set forth herein

103.    Plaintiff brings this count on behalf of herself, the Pennsylvania Class and/or the National Class against the Defendants.

104.    By purchasing VSCs, and making payments to Defendants, Plaintiff and the Classes have conferred benefits upon the Defendants.

105.    Defendants appreciate and acknowledge the benefits received by selling VSCs.

106.    Given the acts of Defendants as set forth above, it is inequitable for Defendants to retain the benefits received in connection with the sales of VSCs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Classes, and award the following relief:

A.      An order certifying this action as a class action pursuant to Rule 23 of the

Federal Rules of Civil Procedure, declaring Plaintiff as representative of the Classes and Plaintiff's counsel as counsel for the Classes;

B. An order awarding declaratory relief and enjoining Defendants from continuing the conduct and practices alleged above and requiring Defendants to accept responsibility for repairs and items which reasonably should be covered by the VSCs;

C. An order awarding costs, restitution, disgorgement, compensatory damages, exemplary damages and/or treble damages as permitted by law, in an amount to be determined at trial;

D. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E. An award of costs, expenses, and attorney's fees as permitted by law; and

F. Such other or further relief as the Court may deem appropriate, just, and equitable.

Respectfully submitted,

STRAVITZ LAW FIRM, PC

By:  /s/ Eric N. Stravitz_____
Eric N. Stravitz (Bar No. 23610)
4300 Forbes Boulevard—Suite 100
Lanham, MD 20706
O: 240.467.5741
F: 240.467.5743
E: eric@stravitzlawfirm.com

Peter A. Muhic (to seek PHV admission)
LEVAN LAW GROUP LLC
One Logan Square — 27th Floor
Philadelphia, PA 19103-6933
O: 215.561.1500
F: 215.827.5390
E: pmuhic@levanlawgroup.com

*Attorneys for Plaintiffs and the Proposed Classes*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all claims in this action.

/s/ Eric N. Stravitz_____

Eric N. Stravitz (Bar No. 23610)
