IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SHARON ROSEDALE, individually and on behalf of all others similarly situated, | * <br> * <br> * <br> * |
| Plaintiff, | * |
| v. | *    Civil Case No. SAG-19-2780 |
| | * |
| CARCHEX, LLC, *et al.*, | * |
| | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Sharon Rosedale ("Rosedale") filed a Class Action Complaint against Defendants CarChex, LLC ("CarChex") and National Auto Inspections, LLC ("NAI"), alleging violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPA") and state law claims for common law fraud, negligent misrepresentation, and unjust enrichment. ECF 1. Defendants filed a Motion to Dismiss, ECF 9, with a supporting memorandum of law, ECF 9-3. (collectively, the "Motion"). Rosedale opposed the Motion, ECF 15, and Defendants filed a Reply, ECF 18. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted in part and denied in part, and certain claims will be dismissed without prejudice.

I.     **FACTUAL BACKGROUND**

The facts below are derived from the Complaint and taken in the light most favorable to Rosedale, the non-moving party. Defendants market vehicle service contracts ("VSCs"), which cover repairs to vehicles that are no longer covered under manufacturers' warranties. ECF 1 ¶ 1. Defendant Carchex, headquartered in Maryland, advertises and markets VSCs nationwide through its website, www.carchex.com, and its associated call centers. *Id.* ¶¶ 11, 12. Defendant NAI is

1

headquartered at the same building as Carchex, and conducts or previously conducted business as Carchex. *Id.* ¶ 14.

Rosedale, a Pennsylvania resident, called Carchex on or about July 31, 2018, seeking to purchase coverage in the form of a VSC. ECF 1 ¶¶ 10, 18. Rosedale alleges, "upon information and belief," that Carchex's call center sales agents "have utilized a uniform sales script throughout the Class period and are trained to make materially identical representations and provide the same information to all callers concerning VSCs and the purported coverage and protection afforded by VSCs." *Id.* ¶ 20. Plaintiff described her vehicle, a 2013 Chevrolet Avalanche with nearly 100,000 miles on it, to the Carchex agent, and "explained that comprehensive coverage for her vehicle and engine was important to her." *Id.* ¶ 21. Plaintiff had reviewed the CarChex website on or about the same date to learn about the options for VSCs. *Id.* ¶ 22.

According to Plaintiff, Carchex made the following representations:

- "Carchex represented to Plaintiff on the phone and via its website that the Powertrain Plus (Gold) VSC would provide comprehensive engine and powertrain coverage, would protect her from expensive engine and powertrain repairs and would cover repairs to her engine and powertrain." *Id.* ¶ 23.

- "Carchex represents that the Gold Coverage is 'comprehensive' and 'includes components from all major systems' which makes it 'a good fit for vehicles with over 90,000 miles.'" *Id.* ¶ 27, 28.

- "Carchex represented to Plaintiff, and continues to represent on its website, that its VSCs cover every significant aspect of an engine, with limited exclusions. Upon information and belief, the same representations are made by phone to all prospective customers." *Id.* ¶ 31.

- "As shown in the screenshot from the Carchex website pasted below, Carchex represents: 'A powertrain warranty covers everything that makes a vehicle move, from the engine to the transmission to the parts that allow power to travel from the engine to the wheels.'" *Id.* ¶ 32.

2

- "Based on the representations on the website and from what Carchex represented to Plaintiff on the phone, Plaintiff purchased the 'Powertrain Plus (Gold)' VSC reasonably relying upon the representation that it would cover everything that makes her vehicle move and was well-suited for her vehicle." *Id.* ¶ 33.

- "When Plaintiff purchased her VSC, she reasonably and justifiably relied upon Defendants' representations that the VSC would cover the engine and powertrain, and that this specifically included '[a]ll internally lubricated parts within the engine including: engine mounts, timing belt, timing gears, cylinder head intake and exhaust valves, valve springs, valve guides, valve seats and all pumps.'" *Id.* ¶ 38.

- "Carchex also falsely assures consumers that should Carchex fail to perform its obligations under the VSC, the obligations of Carchex are insured by 'American Bankers Insurance.'" *Id.* ¶ 48.

On or about July 31, 2018, Plaintiff agreed to purchase the "Powertrain Plus (Gold)" VSC, for a term of 60 months and/or 100,000 miles. *Id.* ¶ 26, 30. She paid $132.63 as a down payment, and committed to twenty-three (23) additional monthly payments of $132.63 each. *Id.* ¶ 29.

About eleven months later, on July 1, 2019, Rosedale brought her vehicle to Uniontown Chevrolet for inspection and diagnosis of an engine issue. *Id.* ¶ 43. At the time, Rosedale was current on her payments due under the VSC, and her vehicle was within the mileage covered under the VSC. *Id.* ¶ 44. Uniontown Chevrolet "called the warranty number provided by Carchex, 800-531-192 [sic]," and invited "the agent for Carchex" to come see the vehicle before repairs ensued.[1] *Id.* ¶¶ 45, 46. The agent declined. *Id.* ¶ 46.

Uniontown Chevrolet then disassembled Rosedale's engine and found a failure involving a piston and exhaust valve. *Id.* When Uniontown Chevrolet called "Carchex" to advise of its finding, it was told that the components were not covered, and no agent would come inspect the

---

[1] Defendants attached a copy of what they believe to be Rosedale's VSC to their Motion to Dismiss. ECF 9. Rosedale objects to this Court's considering the VSC, on the basis of its "authenticity." ECF 15 at 20-21. This Court declines to rely upon the VSC in adjudicating this motion, but notes that its contents may assist the parties in resolving certain factual discrepancies between them, such as whether the person at the phone number listed in the VSC works as a Carchex representative.

vehicle. *Id.* Uniontown Chevrolet advised "the Carchex representative" that the components were part of "the powertrain and the internally lubricated parts of the engine" and should therefore be covered under Rosedale's VSC. *Id.* ¶ 47. Nevertheless, coverage was denied. *Id.*

On July 22, 2019, Plaintiff called the number for American Bankers Insurance, which is contained in her VSC. *Id.* ¶ 49. American Bankers Insurance declined to help with her claim. *Id.* Plaintiff ultimately paid out of pocket for the engine repair. *Id.* ¶ 50. Plaintiff alleges that she "and the Class Members have suffered an ascertainable loss as a result of Defendants' unfair and deceptive conduct, breach of common law and statutory duties, and omission and/or misrepresentations associated with the VSCs, including but not limited to overpaying for VSCs and out-of-pocket losses." *Id.* ¶ 58.

## II. LEGAL STANDARD

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). ECF 9. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement

to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal,* 556 U.S. 662, 684, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...."); see also *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 346, 190 L.Ed.2d 309 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin*., 845 F.3d 564, 567

(4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ultimately, "[a] court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937, 132 S.Ct. 1960, 182 L.Ed.2d 772 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250).

## III. ANALYSIS

Defendants contest two components of Rosedale's Complaint: (1) her class action allegations and (2) her four individual claims for damages. Each category is addressed below.

### A. Class Action Allegations

Rosedale alleges claims on behalf of two classes: a Nationwide Class, defined as "All persons in the United States who purchased a VSC," and a Pennsylvania Class, defined as "All persons in Pennsylvania who purchased a VSC." ECF 1 ¶ 59. Defendants seek to dismiss the allegations, contending that "the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that determination." ECF 9-3 at 6 n.8 (quoting *Waters v. Electrolux Home Prod., Inc.*, Civil No. 5:13CV151(STAMP), 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016)).

In this case, in addition to the pleading problems with Rosedale's individual claims discussed below, her proposed classes are so broad that it is clear that they cannot be certified as defined, even after discovery. In relevant part, a class can only be certified when "there are questions of law or fact common to the class," described as commonality, and when "the claims or defenses of the representative parties are typical of the claims or defenses of the class," known as typicality. Fed. R. Civ. P. 23(a). Neither of those critical elements have been plausibly pled here.

Commonality exists where "the class members have suffered the same injury" and . . . "their claims 'depend upon a common contention.'" *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 458 (D. Md. 2014). As defined, Rosedale's proposed class would include individuals who have suffered no injury whatsoever, either because they have successfully used their VSCs to obtain coverage for any repairs to their vehicles, or because they have not had cause to invoke the coverage provided under their VSCs. In addition, Rosedale's proposed class would include individuals who suffered an injury entirely different than her own, as a result of some coverage dispute unrelated to whether VSC coverage extends to a particular repair of the engine or

powertrain. Finally, Rosedale's unjust enrichment claim would not be viable on its face, for example, in the case of a customer who paid $3000 for a VSC, and then used that VSC to obtain more than $3000 in car repairs. Rosedale's proposed class, as pled, would include that hypothetical customer who provided no benefit to Defendants or anyone else associated with the VSC.

In a similar vein, typicality requires that the plaintiff and the class members must "suffer the same injury." *Leinhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 146 (4th Cir. 2001) (quoting *General Tel. Co. of SW v. Falcon,* 457 U.S. 147, 161 (1982)). The allegations in Rosedale's complaint make clear that Carchex offers a variety of VSCs, with differing levels of coverage. *See* ECF 1 ¶¶ 22, 23. Rosedale specifically alleges that she selected Gold Coverage and the "Powertrain Plus (Gold)" VSC because of the coverage it purported to offer. *Id.* ¶¶ 27-28. Her Complaint contains no allegations pertaining to the coverage offered by any other type of VSC, to permit a conclusion that purchasers of those other products could suffer a similar injury, to the extent they suffered any injury at all. Her attempt, then, to define the relevant class as "persons who purchased VSCs" is grossly overbroad.

Rosedale cites a series of cases in support of her argument that dismissing class allegations, prior to discovery, is premature. ECF 15 at 3-7. Defendants cite their own series of cases in which courts have dismissed class claims prior to discovery. ECF 18 at 5-6. Cases considering the viability of class allegations in the posture of a motion to dismiss are not particularly common, and the Fourth Circuit has provided little guidance on the propriety of dismissal at this early stage of the case. In this Court's view, however, given the overbreadth of the current class allegations, permitting discovery to proceed would constitute a dereliction of this Court's duties to control the scope and extent of discovery under Fed. R. Civ. P. 26(b). *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("District courts generally have broad discretion in managing

discovery"). Accordingly, the class allegations in Rosedale's current Complaint will be dismissed without prejudice, and she will be afforded the opportunity to seek leave to amend her Complaint to plead class claims that can plausibly meet the commonality and typicality standards in Fed. R. Civ. P. 23(a).

**B. Individual Claims**

Rosedale's Complaint asserts four separate claims for relief: a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act, common law fraud, negligent misrepresentation, and unjust enrichment. ECF 1. Initially, the parties are not completely in agreement as to whether Pennsylvania or Maryland law applies to Rosedale's claims. *Compare* ECF1 (complaint citing Pennsylvania law) *with* ECF 9-3 at 5 n.7 ("The Defendants contend that Maryland law is therefore controlling."). However, for the most part, the two states' laws are in accord, and the choice of law issue need not be definitively resolved to adjudicate the pending motion to dismiss. *Poole v. Transcontinental Fund Admin.*, 2016 WL 301225, at *5 (D.S.C. Jan. 25, 2016) (explaining that "the factual inquiry necessary for a choice-of-law analysis often proves inappropriate or impossible at the motion to dismiss stage"). For the purposes of this motion, taking Plaintiff's allegations as true, including that her harm occurred in Pennsylvania, this Court will look to Pennsylvania law.

Rosedale's first individual claim alleges violation of PUTPCPA. That statute requires a plaintiff to plead "(1) a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances; (2) justifiable reliance; and (3) that the plaintiff's justifiable reliance caused ascertainable loss." *Hall v. Equifax Info. Servs. LLC,* 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016) (internal citations omitted). Taking all facts alleged in the Complaint as true and drawing all inference in Rosedale's favor, she has alleged the required elements: that Carchex knowingly

marketed its Powertrain Plus (Gold) VSC to cover repairs that it knew would not be covered[2], that she relied on Carchex's representations to her detriment, and that she had to pay out-of-pocket for her repair. Although Defendants attempt to impose a requirement that Rosedale identify the specific subsection or subsections of PUTPCPA on which she relies, Defendants have not shown that Pennsylvania case law imposes such a requirement, and Rosedale's allegations are otherwise adequate at this stage. Accordingly, Defendants' motion to dismiss Rosedale's individual claim, in Count I, will be denied.

Rosedale's fraud claims[3] are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)

---

[2] Defendants repeatedly cite an inconsistency in Rosedale's factual allegations. *See, e.g.,* ECF 18 at 3-5. Specifically, Rosedale alleges that her repairs should have been covered by the plain language of the VSC, even in the opinion of her automotive repairperson, ECF 1 ¶ 47, but simultaneously alleges that Carchex knew that her repairs would not be covered, and thus fraudulently marketed the VSC. *Id.* ¶ 15. At the motion to dismiss stage, taking all facts as alleged as true, it is conceivable, if not particularly likely, that Carchex would market a VSC to consumers knowing that its express language would be entirely disregarded. This significant factual hurdle can be addressed at a later stage of the litigation.

[3] Claims for negligent misrepresentation are not typically subject to the heightened pleading standards in Fed. R. Civ. P. 9(b). *See Baltimore County v. Cigna Healthcare*, 238 Fed. Appx. 914, 921 (4th Cir. 2007). However, Rosedale's count, nominally entitled "Negligent Misrepresentation," does not allege any of the customary elements of negligent misrepresentation, and instead clearly alleges intentional deception. *See, e.g.,* ECF 1 ¶ 97 ("Defendants at all times relevant knew that their representations were false, deceptive and/or misleading at the time they were made and knew that they were omitting material facts"); *Id.* ¶ 98 ("Defendants acted with the intent to deceive and mislead Plaintiff and the Classes."). Because Plaintiff's allegations sound in intentional fraud, not negligence, the heightened pleading standard in Rule 9(b) would apply, although Plaintiff will have the opportunity to seek leave to amend to clarify her claims, and to articulate an actual claim for negligent misrepresentation that would be subject to the less stringent Rule 12(b)(6) pleading standard.

(quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)), abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224. Plaintiffs' current allegations do not satisfy that requirement. Most of her allegations suggest that generalized representations were made "on the phone and via its website," without particularizing which precise representations were made in each situation. *See, e.g.,* ECF ¶¶ 23, 33. In at least one instance, Plaintiff suggests that a quoted statement made on the website is "shown in the screenshot from the Carchex website pasted below." *See* ECF 1 ¶ 32. However, the screenshots depicted in the Complaint contain no such statement. Another representation Plaintiff alleges to have been made is set in quotation marks in the Complaint, but without any citation to suggest where or when the quoted statement was made. *See, e.g.,* ECF 1 ¶ 38.[4] Although Rosedale's fraud claims will be dismissed without prejudice, as noted above, she will be afforded an opportunity to seek leave to amend to correct her pleading deficiencies.

Finally, to state a claim for unjust enrichment, under Pennsylvania law, Rosedale would have to plausibly allege that a benefit was conferred on the Defendants (Carchex and NAI). *See, e.g., Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 97, 666 A.2d 328 (1995) (providing elements of an unjust enrichment claim). Rosedale alleges that she "agreed to pay $132.63 as a down payment and twenty-three (23) additional monthly payments of $132.63," but has not, for example, pled which entity received the payments she made. ECF 1 ¶ 29. Accordingly, Rosedale's claim

---

[4] In the one instance where Plaintiff alleges with particularity the speaker and circumstances of a statement, the statement post-dates Plaintiff's purchase of her VSC. *See* ECF 1 ¶ 42 (describing an August 3, 2018 letter from Carchex's CEO enclosing her VSC and representing "that Carchex is committed to providing the best products and the best service in the industry."). Thus, Plaintiff could not have relied upon that statement in deciding to purchase her VSC.

11

for unjust enrichment will also be dismissed, without prejudice and with the opportunity to seek leave to amend.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 9, will be GRANTED in part and DENIED in part. Plaintiff's Class Action Allegations, and her individual claims in Count II (Common Law Fraud), Count III (Negligent Misrepresentation), and Count IV (Unjust Enrichment) will be dismissed without prejudice. Defendants' Motion to Dismiss will be DENIED as to Count I. Rosedale may seek leave to amend her claims within thirty days of this Memorandum Opinion and Order. A separate Order follows.

Dated: March 2, 2020  /s/
Stephanie A. Gallagher
United States District Judge