IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SHARON ROSEDALE, individually and on behalf of all others similarly situated, | * * * * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. SAG-19-2780 |
| CARCHEX, LLC, *et al.*, | * * * | |
| Defendants. | * * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Following this Court's earlier opinion and order granting in part and denying in part Defendants' motion to dismiss, Plaintiff Sharon Rosedale ("Rosedale") filed an Amended Class Action Complaint against Defendants CarChex, LLC ("CarChex") and National Auto Inspections, LLC ("NAI") (collectively "Defendants"), ECF 27. The Amended Complaint alleges a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPA"), along with state law claims for common law fraud and negligent misrepresentation. *Id.* Defendants filed a Motion to Dismiss the Amended Complaint, ECF 30, with a supporting memorandum of law, ECF 30-1. (collectively, the "Motion"). Rosedale opposed the Motion, ECF 33, and Defendants filed a Reply, ECF 36. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, the Motion will be granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

The facts below are derived from the Amended Complaint, along with its attachment, and are taken in the light most favorable to Rosedale, the non-moving party. Defendants market vehicle service contracts ("VSCs"), which purport "to cover a vehicle's engine and/or powertrain" for repairs no longer under manufacturers' warranties. ECF 27 ¶ 1, 3. Defendant CarChex,

1

headquartered in Maryland, advertises and markets VSCs nationwide through its website, www.carchex.com, and its associated call centers. *Id.* ¶¶ 15, 17. Defendant NAI is headquartered at the same building as CarChex, and conducts or previously conducted business as CarChex. *Id.* ¶ 16.

Rosedale, a Pennsylvania resident, called CarChex on or about July 31, 2018, seeking to purchase coverage in the form of a VSC. *Id.* ¶¶ 14, 31. Rosedale alleges, "upon information and belief," that CarChex's call center sales agents "have utilized a uniform sales script throughout the Class period and are trained to make materially identical representations and provide the same information to all callers concerning VSCs and the purported coverage and protection afforded by VSCs." *Id.* ¶ 34. Plaintiff described her vehicle, a 2013 Chevrolet Avalanche with nearly 100,000 miles on it, to the CarChex agent. *Id.* ¶ 35. Plaintiff had reviewed the CarChex website on or about the same date to learn about the options for VSCs. *Id.* ¶ 36.

According to Plaintiff, CarChex made the following misrepresentations:

- "The CarChex salesman told Plaintiff that he recommended CarChex's five year warranty plan that would protect Plaintiff for an additional 100,000 miles. He said it was a 'very popular silver program.' He further stated that the warranty protected 'big ticket items, like your internally lubricated parts in the engine' as well as many other components and systems." *Id.* ¶ 38.

- "The CarChex salesman also told Plaintiff that the CarChex warranty was 'a wear-and-tear program' and that 'as soon as the vehicle [was] not running the way it was designed to run from Chevy' CarChex would 'fix it before it becomes a breakdown.'" *Id.* ¶ 40.

- "The CarChex salesman also told Plaintiff on July 29, 2018 that in the event of a breakdown CarChex would pay any dealership or licensed repair facility directly and that all Plaintiff would be responsible for was a $100 deductible." *Id.* ¶ 42.

- "The CarChex salesman represented on the same call that CarChex could get Plaintiff all of the protection he had promised and further stated that he knew CarChex was 'the best company to protect [her] vehicle.'" *Id.* ¶ 44.

- The CarChex salesman also represented "over 95 percent of our claims are paid" and CarChex has an "A plus rating with the Better Business Bureau" and a "99.9% Customer Satisfaction Rate." *Id.* ¶ 47.

Rosedale also alleges that CarChex's website advertises superior coverage and protection, similar to that of a comprehensive new car warranty. *Id.* ¶¶ 25-28. Instead, Rosedale alleges, Carchex delivers "an inferior product riddled with coverage loopholes and exclusions." *Id.* ¶ 29.

On or about July 31, 2018, Plaintiff agreed to purchase a VSC from CarChex. *Id.* ¶ 50. On or about August 29, 2018, after making the purchase but before the VSC went into effect, Plaintiff called CarChex to inquire about the 30-day and 1000 mile waiting period before her coverage commenced. *Id.* ¶ 51. She spoke to a product manager, who told her that "instead of being a sixty-month contract, it was technically a sixty-one month policy, providing coverage for 101,000 additional miles." *Id.* ¶ 52. The manager also told Plaintiff that the VSCs "frustrate [him] because they are written by lawyers, they are written in legalese and they are not how I would write." *Id.* ¶ 54. When Rosedale said the contract was difficult to understand, the manager replied, "Right. Yup, you are 100 percent right. I don't disagree with you." *Id.* ¶ 55.

Rosedale's VSC cost $3,183.00, which she paid as a down payment of $132.63, plus twenty-three (23) additional monthly payments of $132.63 each. *Id.* ¶ 57. About eleven months after coverage started, on July 1, 2019, Rosedale brought her vehicle to Uniontown Chevrolet for inspection and diagnosis of an engine issue. *Id.* ¶ 62. At the time, Rosedale was current on her payments due under the VSC, and her vehicle was within the mileage covered under the VSC. *Id.* ¶ 63. Uniontown Chevrolet "called the warranty number provided in the VSC, 800-531-192 [sic]," and invited an inspector or other agent to come see the vehicle before repairs ensued. *Id.* ¶ 64. The representative declined. *Id.* ¶ 65.

3

Uniontown Chevrolet then disassembled Rosedale's engine and found a failure involving a piston and exhaust valve. *Id.* ¶ 65. When Uniontown Chevrolet called the number listed in the VSC to advise of its finding, it was told that the components were not covered, and no agent would come inspect the vehicle. *Id.* Rosedale had to pay for the repair, which cost thousands of dollars, out of pocket. *Id.* ¶ 67. She alleges that she and the Class Members "have suffered an ascertainable loss as a result of Defendants' unfair and deceptive conduct, breach of common law and statutory duties, and omission and/or misrepresentations associated with the VSCs, including but not limited to overpaying for VSCs and out-of-pocket losses." *Id.* ¶ 72.

## II.   LEGAL STANDARD

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6). ECF 30. Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221, 133 S.Ct. 1709, 185 L.Ed.2d 758 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 547 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). A court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Ultimately, "[a] court decides whether [the

pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies ... if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250).

### III. ANALYSIS

Again in their motion to dismiss the Amended Complaint, Defendants contest the viability of (1) Rosedale's class action allegations and (2) her three individual claims for damages. Each category is addressed below.

#### A. Class Action Allegations

Rosedale asserts claims on behalf of two classes: a Pennsylvania Class, defined as "All persons in Pennsylvania who purchased a VSC," and a Maryland Class, defined as "All persons in

Maryland who purchased a VSC." ECF 27 ¶ 73.  Initially, Defendants correctly note that, taking all of Rosedale's factual allegations as true, she is not a member of the Maryland Class. *See id.* ¶ 14 ("Plaintiff Sharon Rosendale at all times relevant has been a citizen and resident of the state of Pennsylvania and resides in Fayette County, PA.").  As discussed in the Memorandum Opinion regarding Defendant's earlier motion to dismiss, this Court has a duty to control the scope and extent of discovery under Federal Rule of Civil Procedure 26(b). ECF 21 at 8.  In light of that duty, this Court will not permit class allegations to proceed to discovery where it is abundantly clear that the purported class, as stated, cannot be certified.  Unless Rosendale again seeks to amend her complaint to add a class representative who is a resident of Maryland, or adds factual allegations establishing her membership in the Maryland class, the Maryland class cannot be certified with a single representative (Rosedale) who is not a member of the class.  *See, e.g.*, *Muhammad v. PNC Bank, N.A.*, 2016 WL 5843477, at *9 (S.D. W. Va. Oct. 4, 2016) (noting that an Indiana resident plaintiff who had limited his classes to "West Virginia citizens" had "crafted his definitions so that the plaintiff's own citizenship excludes him from the classes").  Thus, this Court will dismiss, without prejudice, Rosedale's class action allegations relating to the proposed Maryland class.

However, Defendants' contentions with respect to the Pennsylvania Class are less persuasive.  The Amended Complaint has narrowed the claims from those presented in the original Complaint, including by eliminating the "Nationwide Class," re-defining VSC to include only contracts purporting to cover "the engine and/or powertrain," and adding specific details about Rosedale's conversation with the CarChex representative, among other changes.  Despite these changes, Defendants again seek to dismiss the allegations, contending that "the pleading makes clear that the purported class cannot be certified and no amount of discovery would change that

determination." ECF 30-1 at 9 (quoting *Waters v. Electrolux Home Prod., Inc.*, Civil No. 5:13CV151(STAMP), 2016 WL 3926431, at *4 (N.D. W. Va. July 18, 2016)).

As to the Pennsylvania class, taking all of the allegations in the Amended Complaint as true, there is at least some narrow possibility that discovery could result in certification. As described in more detail below, many of the alleged "fraudulent misrepresentations," particularly those appearing on the website, are not actionable because they constitute mere puffery, or are not the plausible cause of any injury to Rosedale. However, Rosedale has now alleged, specifically, that the CarChex representative advised her by telephone on July 29, 2018 that the warranty protected "big ticket items, like your internally lubricated parts in the engine" as well as other components or systems. ECF 27 ¶ 38. Assuming the truth of Rosedale's assertions (1) that that same representation was made to all callers due to use of a standard script, and (2) that the disclaimers and exclusions pertaining to coverage of internally lubricated engine parts render the VSCs worthless because "practically any claim can be denied," this Court cannot state conclusively, at this juncture, that the purported claim could not be certified. Though Rosedale's ultimate ability to establish commonality and typicality under these circumstances remains in doubt, the amended allegations pass muster under the low "plausibility" standard applied to a motion to dismiss.[1]

---

[1] For example, as to typicality, the injury suffered by Rosedale (having to pay out of pocket for an expensive repair) appears likely to be quite different than that which might be suffered by a VSC purchaser who paid for similar coverage, but either never sought to use the coverage or used the coverage successfully to repair a vehicle. Similarly, Rosedale may well have an uphill battle establishing that the allegedly fraudulent statement made to her during her telephone call with the CarChex representative was made to a sufficiently numerous group of potential class members, and that those members relied upon the statement to their detriment. Those issues, however, can be sorted out at the certification stage, now that the claims pertaining to the Pennsylvania class have been narrowed to a plausible level.

### B. Individual Claims

Rosedale's Complaint also asserts three individual claims for relief: a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act (PUTPCPA), plus claims for common law fraud and negligent misrepresentation. ECF 27. This Court's analysis of the PUTPCTA claim remains unchanged from its initial opinion, and will not be reiterated here. Defendants may ultimately be able to establish that CarChex and its employees had no way of knowing what VSC claims would be denied by American Auto Shield, LLC ("AAS"). However, at the motion to dismiss stage, this Court has to credit Rosedale's allegations that CarChex plausibly violated PUTPCPA when it marketed the VSCs by making "specific promises and representations to consumers about coverage afforded by the VSCs but know[ing] that the VSCs it delivers are so riddled with coverage loopholes and exclusionary language that the coverage is not as represented." ECF 27 ¶ 21.

Further, as amended, a component of Rosedale's fraud claim now satisfies the heightened pleading requirements of Fed. R. Civ. P. 9(b). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984)), abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

Initially, this Court concurs with Defendants' position that many of Rosedale's alleged "misrepresentations" do not appear actionable, either because the statements do not constitute

9

misrepresentations of material fact or because they did not plausibly cause any damage to Rosedale. The testimonials from satisfied consumers, the representations that CarChex is committed to its customers and to providing excellent service, the illustrative descriptions of coverage provided by new car warranties (not VSCs), and the chart giving possible examples of the cost of covered repairs, even taken in the light most favorable to Rosedale, simply do not plausibly constitute fraudulent representations about the scope of coverage provided by the VSCs.[2] *See, e.g.*, *Rodio v. Smith*, 123 N.J. 345, 352 (1991) (determining that "You're in good hands with Allstate" constitutes "mere puffery"); *Newman v. L.F. Rothschild*, 651 F. Supp. 160, 163 (S. D.N.Y. 1986) (ruling that "I'm the best in the business" is inactionable as mere puffery). Similarly, the CarChex agent's representations that it is "the best company to protect her vehicle" or "has an A plus rating with the Better Business Bureau" are puffery, and the descriptions of certain VSCs as "gold" or "silver" are too vague to be misrepresentations of fact. In the end, Rosedale pleads one sufficiently particular claim: the CarChex representative's statement that the VSC "protects big ticket items, like your internally lubricated parts in the engine."[3] ECF 27 ¶ 38. That asserted misrepresentation is specific to the damages suffered by Plaintiff. In fact, Plaintiff specifically

---

[2] The screenshots in the Complaint conclusively illustrate that the cited website information did not purport to set out the coverage provided by any specific VSC. In fact, the screenshots in paragraphs 26 and 27 appear on a link expressly entitled "facts-about-factory-bumper-to-bumper-and-powertrain-warranties," and state, for example, "The powertrain warranty is also included in the new car purchase." A plain reading, then, obviously indicates that the information reflects typical coverage in factory warranties and does not enumerate promised VSC coverage. Similarly, the screenshot in paragraph 28 contains an express disclaimer, "These are sample repair cost averaged based on actual claims. Actual amount depends on individual repairs required and savings are not guaranteed."

[3] Defendants note that the text of the VSC in fact reflects that internally lubricated engine parts are covered. ECF 30-1 at 29 (citing ECF 27-1 at 4). The gravamen of Rosedale's claim, though, is that CarChex knew that the exclusions and loopholes in the language are so broad as to vitiate any coverage allegedly provided, so the appearance of "internally lubricated engine parts" in the list of covered items is not dispositive.

explains that internally lubricated parts of the engine are not protected because "the VSC contains numerous confusing disclaimers of coverage for a variety of expected occurrences, including when a vehicle loses oil or compression as a result of the occurrence (which certainly is expected for a broken *internally lubricated* part), or the component wears out over time, or simply fails to perform as it should and a mechanic recommends it be replaced, or if the failure is "of a covered part damaged by a non-covered part, or a non-covered part damaged by a covered part." *Id.* ¶ 39. If Rosedale is able to prove that CarChex intentionally marketed coverage for internally lubricated engine parts, knowing at the time it made the representations that such coverage would not be provided by AAS or the other VSC providers, she may plausibly prove her fraud-based claim.

However, Rosedale still fails to assert a plausible claim of negligent misrepresentation. One of the elements of a negligent misrepresentation claim is a duty of care owed to the plaintiff. *See Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 57 (2002). Rosedale has not alleged any duty CarChex owed her, such as a relationship of contractual privity. In fact, the "obligor" in the VSC is AAS, not CarChex. "When the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability . . . This intimate nexus is satisfied by contractual privity or its equivalent." *Jacques v. First Nat'l Bank.*, 307 Md. 527, 534 (1986). Rosedale has not pled contractual privity or the equivalent. Moreover, even had a duty been plead, Rosedale has not alleged any negligent conduct on the part of CarChex or its employees. Instead, the Amended Complaint alleges intentional falsehoods, which are encapsulated in Counts One and Two. In the absence of the relevant allegations to plead a plausible negligence claim, the negligent misrepresentation claim must again be dismissed without prejudice.

**IV.   CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 30, will be GRANTED in part and DENIED in part. Rosedale's class action allegations will be dismissed without prejudice as to the proposed Maryland Class, and her claim for negligent misrepresentation will be dismissed without prejudice. Defendants' Motion to Dismiss will be DENIED as to the remaining class action and individual claims. A separate Order follows.

Dated: November 19, 2020                    /s/
                                            Stephanie A. Gallagher
                                            United States District Judge